UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AJ'S SHOES OUTLET, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-1148** |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY, ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 24). For the following reasons, this Motion is **GRANTED.**

## BACKGROUND

This case arises out of an insurance coverage dispute. Plaintiff AJ's Shoes Outlet, LLC owns property that was vandalized and looted during the power outages caused by Hurricane Ida in August 2021. Defendants Certain Underwriters at Lloyd's, London and Other Certain Other Insurers Subscribing to Binding Authority B60451056862201 and Independent Specialty Insurance Company ("collectively Defendants") issued a policy of surplus lines insurance to Plaintiff which is alleged to have covered the damage.[1] Plaintiff submitted documentation alleging $480,000 in damage and sought insurance proceeds from Defendants under the policy.[2] Defendants, allegedly acting jointly, all refused to pay out under the policy. Plaintiff sued

---

[1] All Defendants are surplus lines insurers who jointly subscribe to the policy bearing Policy No. 2019-801239-03. Doc. 24-1 at 2.

[2] Doc. 27 at 2.

1

in Louisiana state court to enforce the policy. Defendants removed the case to this Court invoking federal question jurisdiction and asserting that the policy contains a valid arbitration clause which falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Defendants specifically stated their intent to file a motion seeking relief under the arbitration clause.[3]

Now before the Court is Defendants' Motion to Compel Arbitration and Stay Litigation. Defendants request this Court to order arbitration and stay Plaintiff's claims pursuant to a valid and enforceable arbitration clause in the policy.[4] Plaintiff opposes.[5]

## **LEGAL STANDARD**

The United States joined the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") in 1970.[6] Congress implemented the Convention by enacting Chapter 2 of Title 9 of the United States Code ("the Convention Act").[7] The Supreme Court has explained that "[t]he goal of the Convention was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[8] The Convention applies to

---

[3] Doc. 1 at 4.
[4] Doc. 24.
[5] Doc. 27.
[6] Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 332 n.4 (5th Cir. 2010).  Where applicable, the Convention supersedes state law. *See* McDonnel Grp., LLC v. Great Lakes Ins. Se., 923 F.3d 427, 431–32 (5th Cir. 2019); Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 (4th Cir. 2012).
[7] 9 U.S.C. § 201.
[8] Scherk v. Alberto–Culver Co., 417 U.S. 506, 520 n.15 (1974).

arbitration agreements between citizens of nations that are signatories to the Convention.

Under the Convention and the Convention Act, courts "[s]hould compel arbitration if (1) there is an agreement in writing to arbitrate the disputes, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."[9] If these four requirements are met, "the Convention requires the district court [ ] to order arbitration . . . unless it finds that said agreement is null and void, inoperative or incapable of being performed."[10]

"Nevertheless, the right to arbitration, like any contractual right, may be waived."[11] The Supreme Court has held that waiver "is the intentional relinquishment or abandonment of a known right."[12] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[13] "Waiver of arbitration is not a favored finding, and there is a presumption against it."[14] The party seeking to show waiver bears the heavy burden of proof.[15]

## LEGAL ANALYSIS

---

[9] Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002).
[10] Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004).
[11] Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1158 (5th Cir. 1986).
[12] United States v. Olano, 507 U.S. 725, 733 (1993); Morgan v. Sundance, 142 S. Ct. 1708, 1714 (2022) (holding that as the "federal rule of waiver does not include a prejudice requirement . . . [s]ection 6 instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA").
[13] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).
[14] *Id.*
[15] Broussard v. First Tower Loan, LLC, 150 F. Supp. 3d 709, 725 (E.D. La. 2015).

Defendants assert that this agreement to arbitrate falls under the Convention, and as such, the Court should conduct a limited inquiry, order all parties to arbitration, and stay this litigation. Plaintiffs oppose, advancing several arguments including: (1) Defendants waived their right to invoke arbitration by substantially invoking the judicial process; (2) the arbitration clause is unclear, and thus invalid; and (3) the arbitration clause is invalid as it requires Plaintiffs to waive future substantive rights. Alternatively, Plaintiff requests if the arbitration clause is found to be enforceable, that the Court sever the ban on exemplary and punitive damages contained in the arbitration clause.

### A. Did Defendants Waive their Right to Invoke Arbitration

The Court must first examine whether Defendants waived their right to arbitrate by substantially invoking the judicial process, as Plaintiff contends.

Courts must determine what constitutes substantial invocation of the judicial process on a case-by-case basis.[16] "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"[17] "The burden on one seeking to prove a waiver of arbitration is a heavy one."[18] "Moreover, whereas here the party seeking arbitration has made a timely demand for arbitration at or before the commencement of judicial proceedings in the Trial Court, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver."[19]

---

[16] Ryan v. Thunder Restorations, Inc., No. 09-3261, 2011 WL 2680482, at *5 (E.D. La. July 8, 2011).
[17] *In re* Mirant Corp., 613 F.3d 584, 589 (5th Cir. 2010) (citing Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th Cir. 1999)).
[18] Sibley v. Tandy Corp., 543 F.2d 540, 542 (5th Cir. 1976).
[19] Southwest Indus. Import & Export, Inc. v. Wilmod Co., Inc., 524 F.2d 468, 470 (5th Cir. 1975).

4

Although Plaintiff extensively discusses how Defendants' actions were prejudicial to its position in this litigation, the Supreme Court has made it clear this is not the appropriate inquiry. The Supreme Court recently held that "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right," and emphasized that "the court seldom considers the effects of those actions on the opposing party."[20] Thus, the Court must scrutinize Defendants' actions to determine whether they "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]"[21]

Defendants explicitly reserved their right to seek arbitration in their Notice of Removal and manifested their intent to file a motion compelling arbitration.[22] Following removal, Defendants did not invoke their right to arbitration until filing this Motion on November 14, 2022, six months after removal.[23] To date, Defendants have submitted two sets of initial disclosures, deposed Plaintiff's owner, Khir Jabbar, sent ten subpoenas for depositions, propounded written discovery requests, and untimely responded to requests for admission.[24]

Under these facts, the Court finds that, the heavy presumption against waiver, made heavier by Defendants' explicit invocation of the right in the Notice of Removal, has not been overcome. While Defendants did participate in initial discovery, they did not initiate any dispositive motion practice. Defendants also brought the arbitration clause to the Court's attention in the

---

[20] *Morgan*, 142 S. Ct. at 1713.
[21] *Id.* at 1714.
[22] Doc. 1 at 1–2 (stating that Defendants remove the case "without waiving the Insurers right to seek dismissal and compel arbitration of this dispute pursuant to the arbitration clause contained in the subject insurance policy, which requires all matters in difference between the parties to be submitted to arbitration").
[23] Doc. 24.
[24] Doc. 27 at 6–7.

Notice of Removal, ensuring all parties were aware of the arbitration clause. Under similar circumstances, courts have allowed comparable levels of participation in litigation, and in fact, allowed for much longer delays without finding that a party has waived its right to arbitrate.[25] As such, the Court finds that Defendants conduct did not evince an intent to abandon its right to arbitrate.

*B. The Convention's "Limited Inquiry"*

Finding that Defendants have not waived their right to invoke arbitration, the Court must now turn to whether the arbitration clause is governed by the Convention. When deciding whether an agreement to arbitrate falls under the Convention, courts are to conduct a limited inquiry.[26] An agreement to arbitrate is governed by the Convention if "(1) there is an agreement in writing to arbitrate the disputes, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."[27] The Court finds that all four elements are met and therefore, that this agreement to arbitrate falls under the Convention.

---

[25] Tenneco Resins, Inc. v Davy Intern., AG, 770 F.2d 416 (5th Cir. 1985) (holding that a party did not waive its right to move for a stay pending arbitration when it waited eight months to invoke its right to arbitration and participated in discovery by answering interrogatories, moving for a protective order, and requesting document production in the interim); Walker v. J.C. Bradford & Co., 938 F.2d 575, 578 (5th Cir. 1991) (holding that where a party invoked arbitration thirteen months after suit was filed and engaged in discovery "its actions in federal court were not so substantial as to . . . overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate"); Ryan v. Thunder Restorations, Inc., No. 09-3261, 2011 WL 2680482, at *5 (E.D. La. July 8, 2011) (holding that where the Fifth Circuit has held a delay of thirteen months to be reasonable, a delay of four months before invoking arbitration was "negligible").

[26] Sedco v. Petroleos Mexicanos Mexican Nat'l Oil (Pemex), 767 F.2d 1140, 1144 (5th Cir. 1985).

[27] *Francisco,* 293 F.3d at 273; 1010 Common, LLC v. Certain Underwriters at Lloyd's, London, No. CV 20-2326, 2020 WL 7342752, at *5 (E.D. La. Dec. 14, 2020) ("A commercial agreement that involves at least one party who is not a U.S. citizen or property located abroad, envisage

The policy contains an arbitration clause in Section H.[28] The second and third elements are clearly met. First, this arbitration clause provides for arbitration in Nashville, Tennessee, which is within the United States, a signatory nation.[29] Next, there is no dispute as to whether the agreement arises out of a commercial legal relationship, as this is a contract for insurance.[30] The first and fourth elements — whether there is an agreement in writing to arbitrate the dispute and whether a party is a foreign citizen — are less clear.

### i.     *Whether a Defendant is a Foreign Citizen*

One Defendant must be a foreign citizen to fall under the jurisdiction of the Convention. Independent Specialty Insurance Company is not a foreign citizen, as it is incorporated in Delaware with its principal place of business in Delaware.[31] As for Lloyd's of London, courts have held that this particular insurance market "creates a jurisdictional conundrum for federal courts sitting in diversity."[32] While this Court is not sitting in diversity, the Defendants'

---

performance abroad, or have some other reasonable relationship with one of more foreign states is deemed to fall under the Convention.").

[28] The Arbitration Clause reads: "All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below." Doc. 1-2 at 37.

[29] *Id.*

[30] Viator v. Dauterive Contractors, Inc., 638 F. Supp. 2d 641, 647 (E.D. La. 2009) (holding that a contract of insurance between a mutual protection and indemnity association and an insured arose out of a commercial legal relationship for the purposes of the Convention); Roser v. Belle of New Orleans, L.L.C., No. 03–1248, 2003 WL 22174282, at *4 (E.D. La. Sept. 12, 2003) (holding that an indemnity insurance agreement satisfied the commercial legal requirement under the Convention); Gulledge et al. v. Lloyd's of London, No. 18-6657, Doc. 17 (E.D. La. Sept. 27, 2018) (stating that since the "agreement arises out of Defendant's insurance policy, a commercial legal relationship, issued to Plaintiff," the third element of the Convention was met).

[31] Doc. 1 at 3.

[32] Certain Underwriters at Lloyd's London "presents an unique structure for jurisdictional analysis." McAuslin v. Grinnell Corp., Nos. 97-775, 97-803, 2000 WL 1059850, at *1 (E.D. La. Aug. 1, 2000) (Vance, J.) (citing E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d

citizenship is relevant, as it determines whether the requirements of the Convention are met. The Fifth Circuit has explained this conundrum as follows:

> Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures at Lloyd's but not with Lloyd's.
>
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.
>
> . . . . .
>
> In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agree to assume.[33]

Federal courts have employed two different approaches to determine the citizenship of Lloyd's of London. Most courts have held that Lloyd's of London

---

925, 930 (2d Cir. 1998) (internal quotations omitted)); *Se also* La. Restaurant Ass'n., Inc. v. Certain Underwriters at Lloyd's London, 573 F. Supp. 3d 1054, 1058 (E.D. La. 2021).
[33] Corfield v. Dall. Glen Hills LP, 355 F.3d 853, 857–59 (5th Cir. 2003).

is a citizen of each jurisdiction in which the individual members are citizens.[34] The Sixth Circuit holds a minority position that Lloyd's of London is only a citizen of the state in which the lead underwriter is a citizen.[35] The Fifth Circuit has not explicitly adopted either approach, though other sections of this Court have adopted the majority view that Lloyd's of London is a citizen of all jurisdictions in which its individual investors are citizens.[36] This Court agrees and finds that each syndicate is relevant to determining Lloyd's of London's citizenship. In the instant case, Defendants have shown that various members of the syndicate are not American citizens. For purposes of determining whether a party to the agreement is a foreign citizen, these foreign syndicates' citizenship is dispositive.[37] As such, the Convention's requirement that at least one Defendant be a foreign citizen is met.

>    ii.   *Whether there is a Written Agreement to Arbitrate the Dispute*

Thus, the only remaining requirement of the Convention is whether there is an agreement in writing to arbitrate this dispute. Plaintiff first argues that the execution of a service of suit clause nullifies the arbitration clause as it makes it unclear whether there actually is an agreement to arbitrate.[38]

---

[34] *La. Restaurant Ass'n., Inc.*, 573 F. Supp. 3d at 1060 (citing Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1081 (11th Cir. 2010); E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930, 936–37 (2d Cir. 1998); Ind. Gas Co. v. Home Ins. Co., 141 F.3d 314, 317 (7th Cir. 1998)).

[35] Certain Interested Underwriters at Lloyd's London, England v. Layne, 26 F.3d 39, 42–44 (6th Cir. 1994).

[36] Johnson v. Certain Underwriters at Lloyd's London, 2009 WL 3232006, at *3 (E.D. La. Oct. 2, 2009); *La. Restaurant Ass'n., Inc.*, 573 F. Supp. 3d at 1058.

[37] Defendants submit that Syndicate 2987 is registered in England with a principal place of business in England, Argo Syndicate 1200 is registered in England with a principal place of business in England, Syndicate 2003 is registered in England with its principal place of business in England, and Syndicate 510 is registered in England with its principal place of business in England. Doc. 1 at 3. Defendants also state that this is an incomplete list of the Underwriters which participate in this policy.

[38] Doc. 1-2 at 69. The service of suit clause in the policy reads that "[i]n the event of failure to pay any amount claimed to be due under the terms of this policy and at your request, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United

9

Defendants respond that this service of suit clause does not act as a waiver of an insurer's rights under an arbitration clause, rather, it is only a waiver of the right to challenge personal jurisdiction in a court of competent jurisdiction in the United States.[39]

In *McDermott International, Inc. v. Lloyd's Underwriters of London,* the Fifth Circuit found that a similar service of suit clause consenting to jurisdiction did not conflict with an arbitration clause. The court held that the "service-of-suit clause's 'failure to pay a claim' provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award."[40]

In *City of Kenner v. Certain Underwriters at Lloyd's, London*, the plaintiff made a similar argument and argued that service of suit clauses consenting to jurisdiction in a competent court in the United States conflicted with the arbitration clause. Relying on *McDermott,* the court held that there was no conflict and "the clauses could be reconciled by interpreting the jurisdictional clause consistent with the arbitration clause to provide a judicial forum for disputes concerning the enforcement of arbitration awards."[41] This Court agrees. The service of suit clause does not constitute a waiver of Defendants' rights under the arbitration clauses. The Court finds that the service of suit clause complements the arbitration clause by establishing a

---

States of America (the "United States") in which a suit for these amounts may be brought. Nothing in this condition constitutes or should be understood to constitute:
1. A waiver of our rights to commence an action in any court of competent jurisdiction in the United States;
2. To remove an action to a United States District Court; or
3. To seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States."

[39] Doc. 34-1 at 3.
[40] McDermott Int'l, Inc. v. Lloyd's Underwriters of London, 944 F.2d 1199, 1205 (5th Cir. 1991).
[41] City of Kenner v. Certain Underwriters at Llyod's, London, No. CV 21-2064, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022).

forum where the parties may enforce an arbitration award.[42] The inclusion of both provisions does not create ambiguity, and the Court finds it clear there is a written agreement to arbitrate in the policy.

Plaintiff next argues that the ambiguity in the policy regarding how many insurance contracts and how many insurers there are render the arbitration clause invalid as it is unclear whether the arbitration clause applies to each different insurer.[43] Specifically, Plaintiff argues that this characterization of the policy in singular terms is contradicted by a Several Liability Clause Endorsement establishing that liability is several and not joint between the insurers, and another statement which provides that "in the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer."[44]

The Court finds this argument to be without merit. The Policy has one singular specified term, one policy number and is identified in the singular as surplus lines insurance coverage.[45] The complex nature of Lloyd's of London's business model does not change the fact that this is one insurance policy with one arbitration clause. As discussed above, the structure of Lloyd's of London is unique, and involves various individuals financing an insurance market, each of which is severally liable to the insured for the percentage of the risk on

---

[42] *1010 Common, LLC*, 2020 WL 7342752, at *10 (holding that a service of suit clause consenting to jurisdiction in the United States "was not intended to override the valid arbitration agreement") (first citing Gemini Ins. Co. v. Certain Underwriters at Lloyd's London, No. 17-1044, 2017 WL 1354149, at *7 (S.D. Tex. Apr. 13, 2017) (finding that the service of suit clause only applied to suits to compel the other party to pay an arbitration award); and then citing Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 554 (3rd Cir. 2009) ("service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration.")).
[43] Doc. 27 at 16.
[44] Doc. 1-2 at 59.
[45] Doc. 34-1 at 4.

11

the policy that they have agreed to assume.[46] The agreement simply reflects the structure of Lloyd's of London. Plaintiff itself filed suit against its insurer in the singular and in its own memorandum refers to a singular "policy of insurance with Defendants."[47] The Court finds that there is one policy and that the arbitration clause applies to all parties who underwrite the policy. Thus, the Court finds that there is a written agreement to arbitrate and that the final requirement under the Convention is met.

Accordingly, since all four requirements are met, "the Convention requires district courts to order arbitration."[48] The Convention only allows for invalidation of arbitration clauses which are "null and void, inoperative, or incapable of being performed."[49] The Court must now determine whether one of these exceptions applies.

*C. Whether the Prohibition on Punitive Damages is Permissible*

Plaintiff argues that the arbitration clause is invalid because it contains a provision which prohibits the award of exemplary and punitive damages in violation of Louisiana's public policy. In the alternative, Plaintiff asks that the Court sever the provision. Defendants respond that the delegation clause included in the policy weighs in favor of referring the question of whether statutory penalties are arbitrable to an arbitration tribunal. Defendants also contend that the Convention only allows for the invalidation of an arbitration agreement where it is found to be "null and void, inoperative, or incapable of being performed," and so the Court should not address Plaintiff's public policy argument.[50]

---

[46] "In sum, while an insured receives a Lloyd's 'policy' of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk." Corfield v. Dall. Glen Hills LP, 355 F.3d 853, 857–59 (5th Cir. 2003).
[47] Doc. 27 at 2.
[48] *Sedco*, 767 F.2d at 1145.
[49] *Freudensprung*, 379 F.3d at 339.
[50] *Id.*

### A. Does the Provision Prohibiting Punitive Damages Invalidate the Arbitration Clause

The arbitration clause prohibits the arbitration tribunal from awarding "exemplary, punitive, multiple or damages of a similar nature."[51] Plaintiff argues that this clause takes the question of whether Defendants owe exemplary, punitive, multiple damages beyond the jurisdiction of the arbitration tribunal and constitutes a waiver of its statutory rights to pursue bad faith claims pursuant to Louisiana Revised Statutes §§ 22:1892 and 22:1973.

Plaintiff's argument ignores the standard for nonenforcement under the Convention. Under the Convention, if all four elements are met the Court must order the parties to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed."[52] This standard contemplates "standard breach-of-contract defenses capable of being applied neutrally on an international scale—such as fraud, mistake, duress, waiver, and the like."[53] Plaintiff's argument hedged in Louisiana's public policy does not allege that the arbitration clause was obtained through any of these defenses. Thus, the narrow exceptions provided in the Convention do not apply and the Court cannot find arbitration agreement to be invalid on public policy grounds.

Additionally, Plaintiff does not discuss the role of the delegation clause. Defendants argue that due to a broad delegation clause this question regarding punitive damages should be referred to an arbitration tribunal. The delegation clause reads:

---

[51] Doc. 1-2 at 37.
[52] *Freudensprung*, 379 F.3d at 339.
[53] 5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London, 463 F. Supp. 3d 785, 790 (S.D. Tex. 2020).

> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.[54]

The Fifth Circuit has made clear that "[u]nless in the exceptional case where the request to compel arbitration is 'wholly groundless', motions to compel arbitration should be granted in the presence of a delegation clause."[55] A delegation clause is "enforceable and transfer[s] the court's power to decide arbitrability questions to the arbitrator."[56]

The delegation clause here specifies that "all matters in dispute between" the parties are subject to arbitration. The question of whether an arbitration tribunal can award penalties and fees under Louisiana law is within the scope of this broad delegation clause, and this Court shall leave this issue to the arbitration tribunal.[57] In light of the Convention's narrow exceptions to enforcement and the delegation clause, the provision prohibiting exemplary, punitive, and multiple damages does not render the arbitration clause unenforceable.

### B. Is the Provision Prohibiting Punitive Damages Severable

---

[54] Doc. 1-2 at 37.
[55] *1010 Common, LLC*, 2020 WL 7342752, at *9 (citing Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 202 n.1 (5th Cir. 2016)).
[56] *Kubala*, 830 F.3d at 202.
[57] In interpreting an identical arbitration clause, another section of this Court recently stated that "[t]he issue raised by the plaintiff is whether the [a]rbitration [t]ribunal has the authority to issue a decision with respect to whether penalties and fees are warranted pursuant to Louisiana law [is] certainly a 'gateway' issue of arbitrability." The court held that it would "leave issues relative to the determination of whether penalties and fees are warranted pursuant to Louisiana law to the Arbitration Tribunal and stay the pending litigation before the Court." STMB Properties, LLC v. Certain Underwriters at Lloyd's London, No. 22-2229, 2022 WL 3924313, at *2 (E.D. La. Aug. 31, 2022).

Finally, Plaintiff urges the Court, alternatively, to sever the ban on provision prohibiting punitive damages as it is an "illegal restriction in contravention of both Louisiana public policy and Plaintiff's statutory rights."[58] The Court's holding that the question of whether penalties and fees are warranted under Louisiana law is arbitrable disposes of this argument, as this is a question for the arbitration tribunal. The Court declines to sever the language, as the delegation clause in the policy makes clear that "all matters in dispute" are to be decided by arbitration.

In conclusion, the arbitration clause is governed by the Convention and does not fall into the narrow exception providing for nullification of arbitration clauses which are "null and void." The issues regarding the provision prohibiting certain types of damages are included in the scope of the broad delegation clause, and thus, must be referred to the Arbitration Tribunal. The Court will retain its authority to address issues that remain following arbitration and will "ensure that the legitimate interest in the enforcement of the [substantive Louisiana law that applies to the reinsurance agreements] has been addressed."[59]

## **CONCLUSION**

Based on the foregoing, the Motion is **GRANTED. IT IS ORDERED** that the Clerk of Court shall stay and administratively close this case, to be reopened, if necessary, after arbitration is completed.

New Orleans, Louisiana this 23rd day of January, 2023.

---

[58] Doc. 1-2 at 37; Doc. 27 at 19.
[59] Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London, 587 F.3d 714, 730–31 (5th Cir. 2009).

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**

16